Opinion by JUDGE BERGER
¶ 1 Defendant, Glenn Robert Fritts, appeals the sentences imposed on resentencing after the postconviction court vacated his original sentences under Crim. P. 35(a). He contends that the court erred in denying his request for appointment of counsel at the resentencing hearing and in imposing consecutive sentences on resentencing. We affirm.
I. Background
¶ 2 Defendant was charged with sixteen counts of sexual-assault-related offenses based on allegations that he molested his minor stepdaughter. In 2000, in exchange for dismissal of the remainder of the charges, defendant pleaded guilty to two counts of sexual assault on a child by one in a position of trust. Defendant was sentenced to two concurrent sentences of twenty years to life.
*846 ¶ 3 In 2007, the Colorado Supreme Court decided Vensor v. People, holding that "the lower term of a sex offender's indeterminate sentence must be fixed according to the provisions of the determinate sentencing scheme of section 18-1.3-401[, C.R.S.]." 151 P.3d 1274, 1280 (Colo. 2007). Consequently, the lower term of a sex offender's indeterminate sentence can exceed the presumptive range of section 18-1.3-401, C.R.S. 2013, only if the sentencing court finds extraordinary aggravating circumstances. Id. (citing § 18-1.3-401(6) ).
¶ 4 In 2012, defendant filed a Crim. P. 35(a) motion to correct an illegal sentence. Defendant argued that because the lower term of his sentence (twenty years on each count) exceeded the presumptive sentencing range of section 18-1.3-401 and the sentencing court had made no finding of aggravating circumstances, his sentence was illegal under Vensor . Defendant also requested that an attorney be appointed to represent him at any resentencing hearing.
¶ 5 The postconviction court issued an order partially granting defendant's Crim. P. 35(a) motion. It vacated his sentence based upon Vensor but denied defendant's request for appointment of counsel. In explaining its decision to deny the request for counsel, the court stated that "a defendant has no federal or state constitutional right to counsel in a postconviction motion" and that there is no statutory right to counsel in Colorado for Crim. P. 35(a) motions.
¶ 6 In September 2012, the postconviction court held a resentencing hearing at which defendant was represented by privately-retained counsel, paid for by his relatives. At the conclusion of the hearing, the court sentenced defendant to two consecutive sentences of ten years to life.
II. Right to Counsel
¶ 7 Defendant argues that the postconviction court erred in holding that a defendant has no constitutional or statutory right to appointed counsel at a resentencing hearing occasioned by a successful Crim. P. 35(a) motion. We agree that defendant may have had a right to appointed counsel, and that the court erred in ruling otherwise, but we conclude that the error was harmless beyond a reasonable doubt.
¶ 8 "Defendants have a constitutional right to the assistance of counsel at all critical stages of trial." People v. Munsey, 232 P.3d 113, 125 (Colo.App.2009) (citing U.S. Const. amends. VI, XIV ; Colo. Const. art. 2, § 16 ).[1] A critical stage of a criminal proceeding is one "where there exists more than a 'minimal risk' that the absence of the defendant's counsel might impair the defendant's right to a fair trial." Key v. People, 865 P.2d 822, 825 (Colo.1994).
¶ 9 There is no constitutional right to postconviction counsel under either the United States Constitution or the Colorado Constitution. Silva v. People, 156 P.3d 1164, 1167 (Colo.2007). There is a limited statutory right in Colorado to postconviction counsel, at least for meritorious Crim. P. 35(c) motions. Id. at 1168. However, we need not decide whether this limited statutory right to postconviction counsel extends generally to Crim. P. 35(a) motions. To the extent that an order granting a Crim. P. 35(a) motion requires, as it did here, resentencing of a defendant, the defendant has a constitutional right to counsel for the resentencing hearing because "[a] sentencing hearing is a critical stage of a criminal proceeding." Munsey, 232 P.3d at 125.
¶ 10 When the postconviction court granted defendant's Crim. P. 35(a) motion, it ordered the district attorney to set the case *847 for a resentencing hearing. Moreover, because defendant's original sentence was held to be illegal, there was no doubt that the purpose of the hearing was to resentence defendant; this was not a situation in which there was merely a clerical error in the mittimus. At the hearing, the court allowed defendant to present witnesses and heard from the People and defendant regarding what sentence would be appropriate. In imposing its new sentence, the court explained it had "considered the statements of the various witnesses as well as statements from [defendant]"; "reviewed the court file ... including the [presentence investigation report] and psychosexual evaluation that was performed on defendant"; reviewed the transcript of the original sentencing hearing; and considered the four general statutory factors a court must consider in imposing a sentence. The court thus held a resentencing hearing and erred in holding that defendant could have no right to appointed counsel.
¶ 11 We disagree with defendant that this error mandates automatic reversal without the need to show prejudice. In cases where there has not been a total deprivation of the right to counsel, Colorado courts have applied a constitutional harmless error standard. Thus in Key, the supreme court held that the erroneous deprivation of the defendant's right to counsel during one discrete stage of the proceedings is reviewed as a "trial error" that requires reversal unless the error was harmless beyond a reasonable doubt. 865 P.2d at 826-27 ; see also People v. Moore, 251 P.3d 451, 454 (Colo. App. 2010).
¶ 12 Defendant preserved the error by requesting the appointment of counsel in his Crim. P. 35(a) motion. The error thus requires reversal unless we can conclude that it was harmless beyond a reasonable doubt. Hagos v. People, 2012 CO 63, ¶ 11, 288 P.3d 116.
¶ 13 We conclude that the error was harmless beyond a reasonable doubt. Defendant was represented by privately-retained counsel at the resentencing hearing. Therefore, he was not deprived of his Sixth Amendment right to counsel, and thus there was no reasonable possibility that he was prejudiced, in the constitutional sense, by the postconviction court's denial of his request for the appointment of counsel. See Moore, 251 P.3d at 454.
III. Consecutive Sentences
¶ 14 Defendant argues that the consecutive sentences imposed by the postconviction court on resentencing were unconstitutional and illegal. We interpret defendant's argument to raise three distinct contentions: (1) the postconviction court violated defendant's due process rights by resentencing him to a harsher sentence after his original sentence was vacated; (2) the court violated defendant's rights against double jeopardy by resentencing him to consecutive sentences because identical evidence supported both charges; and (3) the consecutive sentences were illegal under Colorado statutory law because identical evidence supported both charges. We reject each contention.
A. Due Process-Vindictive Resentencing
¶ 15 Defendant first argues that the postconviction court violated his due process rights by resentencing him to a harsher sentence after vacating his original sentence under Crim. P. 35(a). We disagree.
¶ 16 We review de novo constitutional challenges to sentencing determinations. People v. Rainer, 2013 COA 51, ¶ 39, 412 P.3d 520.
¶ 17 "The United States Supreme Court [has] held that a court may not resentence a defendant to an increased term simply because the defendant chose to exercise his right of appeal.... However, a court may resentence a defendant to a longer period of confinement based on proper considerations reflected in the record." Villanueva v. People, 199 P.3d 1228, 1237 (Colo.2008) (citing North Carolina v. Pearce, 395 U.S. 711, 726, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) ). A more severe sentence must be based upon objective information regarding the defendant's conduct after the original sentence was imposed in order to assure that vindictiveness against the defendant for having successfully attacked *848 his original sentence played no part in the imposition of the new sentence. See Pearce, 395 U.S. at 725, 89 S.Ct. 2072.
¶ 18 Defendant argues that nothing in the record justified increasing his sentence and therefore the consecutive sentences imposed on resentencing were unconstitutional. However, the rule of Pearce was not violated for two reasons. First, defendant's new sentence was not more severe than his original sentence. Second, due process does not prohibit a harsher sentence when the original sentence was declared to be illegal unless a defendant can show that it was the product of actual vindictiveness.
¶ 19 In this case, the aggregate sentence imposed on resentencing was not harsher than defendant's original sentence. "[U]nder a due process analysis, where the aggregate period of incarceration on resentencing is no greater than the original aggregate sentence, there is no presumption of vindictiveness." People v. Woellhaf, 199 P.3d 27, 31 (Colo.App.2007). While the change from concurrent to consecutive sentences sometimes may constitute an increase in the aggregate sentence, People v. Sandoval, 974 P.2d 1012, 1015 (Colo.App.1998), that is not the case here.
¶ 20 Section 17-22.5-101, C.R.S. 2013, requires the Department of Corrections (DOC) to "construe all sentences as one continuous sentence" when an offender "has been committed under several convictions with separate sentences." The Colorado Supreme Court has held that this section requires the DOC to aggregate consecutive sentences when computing an offender's parole eligibility date (PED). Nowak v. Suthers, 2014 CO 14, ¶ 25, 320 P.3d 340. Accordingly, the DOC adds together the minimum period of confinement required for parole eligibility on each sentence to determine the offender's PED. See, e.g., McKnight v. Riveland, 728 P.2d 1297, 1299 (Colo.App.1986). Here, defendant initially was subject to a twenty year to life sentence and thus was required to serve twenty years before he would be eligible for parole; under the new aggregate sentence, he also must serve twenty years before he is eligible for parole. He therefore is subject to exactly the same sentence.
¶ 21 Second, even if defendant's new sentence somehow is harsher than his original sentence, the record establishes no actual vindictiveness on the part of the postconviction court. See Smith, 490 U.S. at 799, 109 S.Ct. 2201 (limiting the application of Pearce to "circumstances ... in which there is a 'reasonable likelihood' ... that the increase in sentence is the product of actual vindictiveness" and requiring, where there is no such reasonable likelihood, that the defendant prove actual vindictiveness); Woellhaf, 199 P.3d at 31 (no presumption of vindictiveness arises where a sentencing court's reasons for imposing a more severe sentence are clear). Rather, the record shows that the court based the new sentence on appropriate considerations such as the nature of the offense, the presentence investigation report and psychosexual evaluation of defendant, and the statutorily prescribed sentencing factors.
¶ 22 Accordingly, the consecutive sentences imposed on resentencing did not deprive defendant of due process of law.
B. Double Jeopardy
¶ 23 Defendant argues that the imposition of the two consecutive sentences on resentencing violated his rights against double jeopardy because identical evidence supported both counts on which he was sentenced. We disagree.
¶ 24 The Double Jeopardy Clauses of both the United States and Colorado Constitutions preclude the imposition of multiple sentences for the same offense. Patton v. People, 35 P.3d 124, 128-29 (Colo. 2001). If a defendant is simultaneously prosecuted for distinct offenses under the same statute, as defendant was here, to determine whether the defendant's rights against double jeopardy were violated, a reviewing court must resolve (1) whether the unit of prosecution prescribed by the legislature permits the charging of multiple offenses and (2) whether the evidence in support of each offense justified the charging of multiple offenses and the imposition of multiple sentences. See *849 Quintano v. People, 105 P.3d 585, 589-90 (Colo. 2005) ; Woellhaf v. People, 105 P.3d 209, 214-15 (Colo. 2005).
¶ 25 " 'Unit of prosecution' refers to the extent to which the relevant statute permits the prosecution to separate the defendant's conduct into discrete acts for purposes of prosecuting multiple offenses." Quintano , 105 P.3d at 590. Regarding the unit of prosecution under the sexual assault on a child statute, "[t]he prosecution may pursue multiple convictions if the underlying evidence supports factually distinct offenses." Woellhaf , 105 P.3d at 218. Accordingly, we evaluate defendant's conduct under the second prong of the analysis to determine whether defendant constitutionally could receive multiple sentences.
¶ 26 A defendant constitutionally may receive multiple sentences if the defendant's conduct constituted factually distinct and separate acts, and therefore, factually distinct offenses. See id. at 219. "[I]ncidents of sexual assault may be factually distinct if separate criminal acts have occurred at different times and were separated by intervening events." Quintano, 105 P.3d at 591.
¶ 27 At the resentencing hearing, the postconviction court determined that defendant admitted "to violating [the] victim on at least two occasions in Douglas County, and those are the offenses for which he's being sentenced today." The court found "that there are separate offenses for which [defendant] is being sentenced in this case" because one incident "occurred ... in the living room of [defendant's] residence on one day" and another incident occurred in "[defendant's] bedroom on a separate date in that residence."
¶ 28 The issue presented to us is whether the record supports the court's finding that two factually distinct offenses occurred. The charging document shows that, regarding the two counts to which defendant pleaded guilty, the charges were identical (including the same date range). In such circumstances, reviewing courts have looked "to all the evidence introduced at trial to determine whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses." Id. at 592 ; see also Woellhaf, 105 P.3d at 212.
¶ 29 Defendant pleaded guilty, however, so instead of looking at the evidence introduced at trial, we must look to other sources that may show the factual bases of defendant's convictions. Cf. People v. Bobrik, 87 P.3d 865, 870-71 (Colo. App. 2003) (concluding that identically worded charges in an information did not violate double jeopardy protection because the factual bases supporting defendant's guilty pleas, adduced at the providency hearing, described numerous instances of sexual contact occurring on different occasions).
¶ 30 At defendant's providency hearing, he stipulated to a sufficient factual basis for both counts. Although the prosecution explained the elements of the offense of sexual assault on a child by one in a position of trust, no specific facts that would support the elements were adduced. Thus nothing at that hearing showed two separate acts had occurred.
¶ 31 Defendant is challenging the sentences imposed on resentencing, not the convictions. "A defendant at a sentencing hearing has already been found guilty of the crime for which punishment is to be imposed, and therefore, the defendant's due process rights are correspondingly limited." People v. Pourat, 100 P.3d 503, 505 (Colo. App. 2004). For this reason, sentencing courts may rely on evidence that is not presented in accordance with the due process procedures required in the guilt stage of a trial. People v. Padilla, 907 P.2d 601, 607 (Colo. 1995). Therefore, it is appropriate to look at other reliable information in the record, beyond the transcript of the providency hearing, to determine whether defendant's conduct constituted factually distinct and separate acts.
¶ 32 Defendant argues that "there are no facts, stipulations, admissions or agreements in the record to support the District Court's speculation and assumption that the two charges were linked to separate events that occurred in different places at different *850 times."[2] That argument ignores the fact that both a probable cause affidavit and the presentence investigation report (PSIR) contain statements that amply support the finding made by the postconviction court.
¶ 33 Section 16-11-102(1)(a), C.R.S. 2013, requires that after a conviction by a judge or jury, the probation department must prepare a PSIR regarding pertinent information about a defendant, and the PSIR must be furnished to the defendant prior to the sentencing hearing. See also Crim. P. 32(a). "[A] defendant has a right to be heard regarding the accuracy of matters in his [PSIR]." Padilla, 907 P.2d at 609 ; see also § 16-11-102(5) ("After receiving the [PSIR] and before imposing sentence, the court shall afford the defendant an opportunity to make a statement in his or her own behalf."); Crim. P. Rule 32(b)(1). Thus, the PSIR has some measure of reliability, and "[c]ourts resolving sentencing matters may rely on uncontroverted facts set forth in a [PSIR]." People v. Tuffo, 209 P.3d 1226, 1231 (Colo. App. 2009).
¶ 34 In this case, the PSIR, which the postconviction court reviewed before the resentencing hearing, includes information that the victim alleged at least two distinct incidents of sexual contact with defendant on different days. Nothing in the record indicates that defendant, prior to pleading guilty or the imposition of his original sentence, disputed these factual allegations. Indeed, defendant pleaded guilty to two separate counts of sexual assault on a child.
¶ 35 Under the procedural posture presented here, we conclude that the PSIR was sufficient to demonstrate that the sentences defendant received on resentencing were based on separate and distinct offenses.
¶ 36 To the extent that defendant also argues that the imposition of consecutive sentences on resentencing violated his rights against double jeopardy because he was resentenced to a harsher sentence, we reject this argument. As we determined above, the sentence imposed on resentencing was not harsher than defendant's original sentence. And, even assuming it was harsher, "when an original sentence is illegal, resentencing does not constitute double jeopardy ... even if the subsequent sentence is longer than the original, and even though the defendant has begun serving the original sentence." People v. Dist. Court, 673 P.2d 991, 997 (Colo. 1983) ; see also People v. Smith, 121 P.3d 243, 251 (Colo. App. 2005) ("[A] sentence that is contrary to legislative mandates is illegal and may be corrected at any time by a sentencing court without violating a defendant's rights against double jeopardy.").
¶ 37 Accordingly, we reject defendant's claim that the consecutive sentences imposed on resentencing violated his rights against double jeopardy.
C. Illegal Sentence Claim
¶ 38 Lastly, defendant argues that the consecutive sentences imposed on resentencing were illegal because his convictions were based on identical evidence and that in such circumstances, section 18-1-408(3), C.R.S. 2013, mandates concurrent sentences. We disagree.
¶ 39 We review a sentencing court's decision to impose consecutive sentences for abuse of discretion. People v. Glasser, 293 P.3d 68, 78 (Colo. App. 2011). We must affirm the court's decision to impose consecutive sentences if there is any evidence in the record to support the findings that separate acts support each of the convictions. Id.
¶ 40 Usually, a sentencing court has discretion to impose either concurrent or consecutive sentences when a defendant is convicted of multiple offenses. Juhl v. People, 172 P.3d 896, 899 (Colo. 2007). However, when multiple convictions involving the same victim are supported by identical evidence, section 18-1-408(3) requires concurrent sentences. Id.
¶ 41 "The mere possibility that identical evidence may support two convictions *851 is not sufficient to deprive the court of its discretion to impose consecutive sentences." Id. at 900. Rather, "[a] sentencing court is mandated to impose concurrent sentences only when the evidence will support no other reasonable inference than that the convictions were based on identical evidence." Id. Whether two convictions are supported by identical evidence depends on "whether the charges result from the same act, so that the evidence of the act is identical, or from two or more acts fairly considered to be separate acts, so that the evidence is different." People v. Torrez, 2013 COA 37, ¶ 33, 316 P.3d 25.
¶ 42 In the context of guilty pleas, courts look to evidentiary sources in the record to determine whether the charges were based on identical evidence. See, e.g., Juhl, 172 P.3d at 898 n. 1 (relying on facts developed at the preliminary hearing and a pretrial motions hearing); Torrez, ¶¶ 39, 42, 44, 46 (examining the charging document and the prosecutor's and the court's statements during the sentencing hearing); People v. McAfee, 160 P.3d 277, 283 (Colo. App. 2007) (relying on the statement in support of the defendant's arrest, adopted as the factual basis for the defendant's guilty plea). Here, as discussed above, the PSIR demonstrates that the charges to which defendant pleaded guilty were based on two separate acts. The affidavit providing probable cause for defendant's arrest also contains similar information.
¶ 43 Therefore, because there is evidence in the record that separate acts, and thus different evidence, support each of defendant's convictions, we conclude that the postconviction court did not abuse its discretion by imposing consecutive sentences.
IV. Conclusion
¶ 44 Defendant's sentences are affirmed.
Casebolt and Sternberg* , JJ., concur.

The constitutional right to counsel includes the right of an indigent defendant to have court-appointed counsel paid for by the state. People v. Steinbeck, 186 P.3d 54, 56 (Colo.App.2007). A defendant bears the initial burden of raising his or her claim of indigency to the court, and then the public defender, subject to judicial review, determines whether the defendant meets the indigency guidelines. Id. (citing § 21-1-103, C.R.S. 2013; Chief Justice Directive 04-04). The error here thus was the postconviction court's failure to refer defendant's request for appointment of counsel to the public defender for a determination of defendant's indigency. We express no opinion as to whether defendant would have been eligible for appointed counsel had this procedure been followed.

As noted above, defendant argues, incorrectly, that there is nothing in the record that establishes that he committed two separate crimes. He does not argue that only certain types of information may be utilized to determine the factual basis for his pleas under the applicable double jeopardy test for guilty pleas, and we do not address issues that defendant has not raised either in the trial court or on appeal. See Patton v. People, 35 P.3d 124, 132-33 (Colo. 2001).

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2013.